# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:12-CR-87-TLS |
| | ) | |
| BRENTON ENNIS | ) | |

## OPINION AND ORDER

The Defendant, Brenton Ennis, pled guilty to Robbery of Firearms and Money in violation of 18 U.S.C. § 1951, and Use of a Firearm During and In Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c). An officer with the United States Probation Office prepared a Presentence Investigation Report (PSR) prior to the Defendant's sentencing. The statutory maximum sentence for a violation of § 1951 is 20 years; and the statutory minimum sentence for a violation of § 924(c) is 10 years. According to the PSR, the Defendant's total offense level is 26, and criminal history category is III. The United States Sentencing Guideline range corresponding to this offense level and criminal history category is 78 to 97 months of imprisonment for Count 1, and 10 years for Count 2 to run consecutively with Count 1. The Defendant objects to the obstruction of justice enhancement under U.S.S.G. § 3C1.1, as contained in Paragraph 36 of the PSR. The Court conducted evidentiary hearings on July 31, 2014, and September 29, 2014. Both parties made oral arguments in lieu of written briefs. The objection is ripe for ruling.

The Court overrules the Defendant's objection because the Government submitted sufficiently reliable evidence to sustain the obstruction of justice enhancement under § 3C1.1.

**BACKGROUND**

By way of Indictment [ECF No. 26] filed on December 18, 2012, the Government charges that, on November 13, 2012, the Defendant and his Codefendant, Craig Whigum, unlawfully obstructed, delayed, and affected interstate commerce by robbery; and knowingly used, carried, brandished and discharged a firearm during and in relation to the robbery. The Defendant entered a guilty plea, which was adopted by the Court on May 24, 2013. The Defendant is scheduled for sentencing on November 21, 2014.

**FACTUAL BACKGROUND**

On November 13, 2012, the Defendant and his Codefendant, Craig Whigum, committed an armed robbery of a federally-licensed firearms dealer. [ECF No. 68.] The Defendant was arrested on November 14, 2012, but was released after posting bond on state charges. (*Id.*)

On November 16, 2012, the City of Fort Wayne and Allen County Emergency Call Center received a 911 call reporting a threat of violence from an identified caller (hereinafter "Caller"). (Gov. Ex. 1.) The Caller informed a Fort Wayne Police Department (FWPD) officer that a "couple of days" prior, he found Samantha Bolden—the Defendant's mother—in his garage. (Gov. Ex. 2.) Identifying herself as the mother of an armed robbery suspect, Bolden told him that the Defendant left clothing and other items in his garage after the Defendant evaded the police.[1] (*Id.*) He requested that Bolden leave his property.[2] (*Id.*) The Caller said that on

---

[1] Bolden testified that she went to the Caller's home—accompanied by Elijah Freeman and another individual—to recover the Defendant's clothing and a wallet. (Tr. 12–13, July 31, 2014.)

[2] Bolden said she knocked on the door and requested entry into the garage, which was granted. Bolden testified that she left with a pair of navy sweat pants. (Tr. 13–14, July 31, 2014.)

2

November 16—the day of the 911 call—the Defendant approached his home and requested entrance into his garage to retrieve clothing and a cell phone. (*Id*.) The Defendant spoke to the Caller through a locked screen door. (*Id*.) He denied the Defendant's request and suggested the police be contacted. (*Id*.) The Defendant then responded, "It's my stuff and I'm gonna get my stuff," and made an unsuccessful attempt to open the locked screen door. (*Id*.) He again denied the Defendant's renewed request for entrance. (*Id*.) According to the Caller, the Defendant then made a gesture with his hand, using his thumb, index and middle fingers to create the image of a gun pointed at the Defendant's head. (*Id*.) He said the Defendant then pushed down on his thumb, to a represent a gun being fired, and said, "I got something for you, dude." (*Id*.) The Defendant then left the scene. (*Id*.) The Caller stated that the Defendant's gesture placed him in fear for refusing to permit the Defendant into his garage. (*Id*.)

On November 16, 2012, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) recovered three items from the Caller's home: a hoodie, a pair of sweat pants, and a piece of cardboard with the name "Sam" and a phone number on it. (Tr. 25, Sept. 29, 2014.) On November 19, 2012, the Defendant was charged in Allen County Superior Court with "Intimidation - Threat to Commit a Forcible Felony." (Gov. Ex. 3.) The charge was dismissed on November 26, 2012. (*Id*.)

Virshawn Lewis testified for the Defendant. (Tr. 3–16, Sept. 29, 2014.) According to Lewis, he accompanied the Defendant and Elijah Freeman[3] to the Caller's home on November 16, 2012. (*Id*. at 5 – 6.) Lewis testified that all three individuals approached the home and requested access to the property to retrieve the Defendant's belongings. (*Id*. at 6–7.) Lewis was

---

[3]Freeman died on April 3, 2013. (Gov. Ex. 4.)

unable to recall where he was standing in relation to the Defendant. (*Id*. at 10.) Lewis said their requests were repeatedly denied by the Caller, who was allegedly acting "weird" and "doing funny stuff."[4] (*Id*. at 8.) When asked by defense counsel how the Defendant reacted to the denial of his request, Lewis provided the following testimony:

> We were just sitting there talking to [the Caller], I mean like asking him can we still go back there or can you go back there and then he just kept saying no. He kept having little excuses why not to go back there. So [the Defendant] walked away and stuff, and then he did something, [the Caller] said something weird, so I looked back, and I'm trying to see what's going on and everything and after that, we just left. (*Id*.)

According to Lewis, the Defendant did not say anything as he walked off. (*Id*.)

On cross-examination, Government Counsel referenced a previous statement made by Lewis to ATF Special Agent Sean Skender that, during the encounter with the Caller, the Defendant was behind Lewis and that Lewis couldn't see what the Defendant was doing. (*Id*. at 14, 29.) Lewis responded, "I don't remember that part." (*Id*.)

In addition to Lewis' testimony, the Defense relies on two letters: one letter allegedly written and signed by Freeman on November 19, 2012; and another letter allegedly written and signed by Lewis on an unmarked date. (Def. Ex. A; Gov. Ex. 6.) Both letters were signed and witnessed by Bolden; and both letters allege that the Defendant did not threaten the Caller on November 16, 2012. (*Id*.)

According to Lewis, he drafted his letter at the request of Bolden. (*Id*. at 9–10.) Agent Skender testified that, during a previous conversation with Lewis, he was "insistent" that the letter was written in summer 2013, and that it was written at the same time as Freeman's letter.

---
[4]When asked to elaborate by Government counsel, Lewis testified: "Oh, well, he was like, I'm fit to call the police, he was trippin', like what is you on, you know what I mean, I was trying to figure out what he was doing. He was on some weird stuff. . ." (Tr. 11, Sept. 29, 2014.)

4

(*Id*. at 28–29.) Skender said Lewis told him at a subsequent meeting that the letter was not written in summer 2013; rather, it was written at the same time as Freeman's letter, dated November 19, 2012. (*Id*. at 29.) On cross-examination, Government Counsel referenced Lewis' previous statement to Agent Skender that he wrote the letter in the summer. (*Id*. at 12.) Lewis responded, "Yeah, I thought it was, because that's when another case was going on with Ennis, so I thought it was summer."[5] (*Id*.) Government Counsel also referenced the use of the word "intimidate" in Lewis' letter, which Lewis was unable to spell when asked to by Agent Skender. (*Id*. at 13.) Lewis responded that he "probably asked Bolden how you spell 'intimidate'." (*Id*.)

Regarding the Freeman letter, Bolden testified that she witnessed Freeman write the letter. (Tr. 7, July 31, 2014.) As rebuttal evidence, the Government offered a report written by ATF handwriting exemplar specialists based on a comparison of Freeman's handwriting samples. (Gov. Ex. 7.) Agent Skender confirmed the accuracy of the report, which concluded that Freeman did not write the letter. (Gov. Ex. 7; Tr. 24, Sept. 29, 2014.) The report did not provide a conclusion whether or not Freeman signed the document. (*Id*.) In argument, Government counsel noted that Freeman's name is also spelled incorrectly in the letter.[6] (Tr. 35.)

## DISCUSSION

Courts resolve disputed sentencing factors at a sentencing hearing in accordance with Federal Rule of Criminal Procedure 32(i). U.S.S.G. § 6A1.3(b). The Guidelines provide the following instruction:

---

[5] Government counsel also noted that Lewis could not have written the letter in summer 2013 because Lewis was incarcerated at that time. (Tr. 12, Sept. 29, 2014.)

[6] Freeman's letter states, "I Elijah Freemon . . . ." (Def. Ex. A.)

5

> When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

U.S.S.G. § 6A1.3(a). The Seventh Circuit determined that the Government must prove, by the preponderance of evidence, a disputed fact relating to sentencing. *See United States v. Schroeder*, 536 F.3d 746, 753 (7th Cir. 2008) (reiterating that the Government's burden of proof at sentencing is that a fact has "sufficient indicia of reliability to support its probable accuracy" even if the fact would not be admissible at trial) (quoting *United States v. Artley*, 489 F.3d 813, 821 (7th Cir. 2007))). Ultimately, "[s]entencing judges necessarily have discretion to draw conclusions about the testimony given and evidence introduced at sentencing" and such conclusions must "be based on reliable evidence, not speculation or unfounded allegations." *United States v. Bradley*, 628 F.3d 394, 400 (7th Cir. 2010) (internal quotation marks omitted).

The Defendant objects to the application of the two-level enhancement pursuant to U.S.S.G. § 3C1.1 for obstructing or impeding the administration of justice, as contained in Paragraph 36 of the PSR. Section 3C1.1 provides:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

The sentencing guidelines provide a non-exhaustive list of examples of the types of conduct to which § 3C1.1 applies. Application Note 4 identifies the following, which are relevant to this case: (A) "threatening, intimidating, or otherwise unlawfully influencing a . . . witness . . . ,

directly or indirectly, or attempting to do so"; and (K) "threatening the victim of the offense in an attempt to prevent the victim from reporting the conduct constituting the offense of conviction."

The basis for the two-level enhancement is that the Defendant, while attempting to recover personal belongings he stashed in a garage following an armed robbery, made an intimidating or threatening gesture and remark to the homeowner.

Paragraph 22 of the PSR states:

> The defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice when the defendant went to [the Caller's] residence and told him he was going to get his stuff (clothing and his cell phone) from [the Caller's] garage. [The Caller] told him he was not allowed to go into the garage and the defendant states "It's my stuff and I'm gonna get my stuff" and began to pull on the screen door but could not open it because it was locked. [The Caller] again told the defendant he could not go into his garage, at which time the defendant made a gesture with his hand, using his thumb, index finger, and middle finger to create the image of a gun near his own head. He then pushed down on his thumb to represent a gun being fired and said "I got something for you dude." [The Caller] advised officers he was in fear for refusing to let the defendant into his garage and believed the threat was to shoot him. He further believed the defendant was involved in an armed robbery and may be armed.

For support, the Government relies on a redacted recording of the 911 call and a probable cause affidavit.

The Defendant argues that he did not make an intimidating or threatening gesture and/or remark to the Caller on November 16, 2012. The Defendant offers the testimony of Virshawn Lewis, and points to two letters: one allegedly written and signed by Freeman on November 19, 2012; and another allegedly written and signed by Lewis on an unmarked date. The letters and Lewis' testimony allege that the Defendant did not threaten the Caller on November 16, 2012.

The Court notes several factors that undermine the Defendant's evidence. First, the

7

Freeman letter lacks sufficient indicia of reliability. During the July 31, 2014, evidentiary hearing, Bolden testified that she witnessed Freeman write the letter, dated November 19, 2012. To rebut Bolden's claim, the Government entered into evidence a report by ATF handwriting exemplar specialists, which concluded that, based on a comparison of Freeman's handwriting samples, there is no indication that Freeman wrote the letter. Bolden's contention is further undermined by the letter's content; in particular, the letter misspells Freeman's own name.[7] Aside from Bolden's testimony, the Defendant has presented no additional evidence to suggest that Freeman wrote or even signed the letter. Accordingly, the Freeman letter is granted little to no weight.

Secondly, the testimony from Agent Skender casts doubt on the reliability of the letter allegedly drafted by Lewis. Unlike the Freeman letter, the Lewis letter is undated. On direct examination, Agent Skender testified that, during a conversation with Lewis, he was "insistent" that the letter was written in summer 2013, and that it was written concurrently with Freeman's letter. But this statement cannot be accurate. As the Defendant admitted during his testimony, the letter could not have been written in summer 2013 because Lewis was incarcerated during that period. And even if it was written in summer 2013, it could not have been written at the same time as Freeman's letter because Freeman's letter, if accurate, is dated November 19, 2012. Freeman also died on April 3, 2013, several months prior to summer 2013. Lewis later revised the date during a second meeting with Agent Skender, stating only that the Lewis letter was written concurrently with Freeman's letter.

---

[7] Government Counsel also noted that Ennis' previous defense counsel, who formally withdrew from representation on September 25, 2013, did not possess a copy of Freeman's letter during his representation. (Tr. 36, Sept. 29, 2014.) In light of the other evidence presented, the Court need not consider or rely on this factor to discredit the Freeman letter.

Similar to the Freeman letter, the Lewis letter is also undermined by the apparent influence of Bolden. For instance, the Government noted the letter's use of the word "intimidate," a word Lewis was unable to spell when asked to by Agent Skender. Lewis responded that he "probably asked Bolden how you spell 'intimidate'."

Lastly, Lewis' testimony fails to undercut the reliability of the Government's evidence. Lewis testified that the Defendant did not threaten the Caller on November 16, 2012—specifically, "he just walked off" without saying anything. However, when asked by Government Counsel where he was standing in relation to the Defendant, Lewis responded, "I don't remember." This testimony contradicts a previous statement made by Lewis to Agent Skender that the Defendant was standing behind Lewis and that Lewis couldn't see what the Defendant was doing. When asked by Government Counsel if he recalled making this statement to Agent Skender, Lewis responded, "I don't remember that part." This is an important point. Lewis was not only testifying to the occurrence or non-occurrence of an intimidating remark, he was also testifying to the occurrence or non-occurrence of an unspoken hand gesture—a hand formation resembling a gun being fired. Even when putting aside Lewis' previous statement to Agent Skender, Lewis' testimony suggests, at best, that he was unsure whether or not he was able to see the Defendant make an intimidating gesture toward the Caller.

In light of the evidence presented, the Court finds the Defendant's evidence as lacking sufficient reliability. The Court credits the Government's evidence, including a redacted recording of the 911 call and a probable cause affidavit, which show by a preponderance of evidence that the Defendant made an intimidating gesture and/or remark to the Caller on November 16, 2012. Accordingly, the Court finds that the Government has met its burden of

proof to justify the two-level enhancement for obstruction of justice under § 3C1.1.

## CONCLUSION

For the foregoing reasons, the Court OVERRULES the Defendant's objection to the two-level enhancement for obstructing or impeding the administration of justice, as contained in Paragraph 36 of the PSR. Sentencing scheduled for November 21, 2014, at 1:00 PM, is CONFIRMED.

SO ORDERED on October 28, 2014.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT